UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
CHRISTINA WIGGINS,                      No. 2:24-cv-5643
                                            (MEF)(MAH)
         Plaintiff,

    v.                                  OPINION and ORDER

NETFLIX, INC.,

         Defendant.
```

**Table of Contents**

I.   **Background**
II.  **Validity**
III. **Federal Law**
IV.  **Conclusion**

\* \* \*

I. **Background**

A woman[1] ("the Plaintiff") sued her former employer[2] ("the Defendant"[3]) under the New Jersey Law Against Discrimination for pregnancy-based discrimination, harassment, and retaliation. See Complaint (ECF 1) ¶¶ 1, 40-71 (citing N.J. Stat. Ann. § 10:5-1 et seq.).

---

[1] Christina Wiggins.

[2] Netflix, Inc.

[3] The complaint also lists as defendants a set of John Doe individuals and corporations. See Complaint at 1. But none have been named or served, so the focus here is only on Netflix.

In response, the Defendant has moved to compel arbitration, citing an arbitration clause in the Plaintiff's employment contract.  See Notice of Motion to Compel Arbitration (ECF 37) at 1; Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration ("Defendant's Brief") (ECF 37-1) at 1-3.

\* \* \*

The Plaintiff argues that the case should not be sent to arbitration for two reasons.

First, because no valid arbitration agreement was formed.  See Plaintiff Christina Wiggins's Opposition to Defendant Netflix's Motion to Compel Arbitration ("Plaintiff's Brief") (ECF 39) at 7-17.

And second, because even if there was a valid agreement, it cannot be enforced under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022.  See id. at 20-26 (citing 9 U.S.C. § 401 et seq.).

Take these arguments up below.

## II.  Validity

To determine whether an arbitration agreement is valid, courts look to "ordinary state-law principles that govern the formation of contracts."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under New Jersey law,[4] "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (cleaned up).[5]

---

[4]  Via their legal briefs, the parties agree that it is New Jersey law that applies.  See Defendant's Brief at 6-12 (applying New Jersey law); Plaintiff's Brief at 7-20 (same). Accordingly, the Court applies New Jersey law.  See Chapman v. Salesforce, Inc., 2026 WL 74192, at *1 n.4 (D.N.J. Jan. 9, 2026); see also Complaint ¶ 11 (indicating that the Plaintiff worked for the Defendant "exclusively from her home in Hudson County, New Jersey").

[5]  There are other components of a valid contract under New Jersey law.  See Stabile v. Macy's, Inc., 751 F. Supp. 3d 429, 433 (D.N.J. 2024).  But the parties only take up the mutual

This requires parties "to have full knowledge of [their] legal rights," id. (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)), based on contractual language that "explain[s] that the [relevant party] is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

Put differently, there needs to be "language that explains that a party who agrees to arbitration waives the right to sue in court and makes clear that arbitration and civil litigation are distinct proceedings." Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 137 (2020).[6]

\* \* \*

Against the above legal backdrop, move now to this case.

When the Plaintiff was offered her job, she signed (i) an offer letter, and (ii) a document referenced in that offer letter, titled an "Agreement Regarding Your Netflix Employment (Including Mutual Agreement to Arbitrate)." See Declaration of Counsel in Support of Motion to Compel Arbitration, Exhibit A (from here, (ii) is "the Employment Agreement") (ECF 37-2); see also Defendant's Brief at 3.[7]

Per the Employment Agreement:

---

assent requirement, so that is the Court's sole concern here. See Chapman, 2026 WL 74192, at *2 & n.5.

[6] No one argues that New Jersey's mutual assent law, when applied in the arbitration context, is preempted by the Federal Arbitration Act. And there does not appear to be an obligation for the Court to raise that issue sua sponte. See Stabile, 751 F. Supp. 3d at 441 n.22; see also Chapman, 2026 WL 74192, at *2 n.6.

[7] In assessing a motion to compel arbitration, even where a complaint makes "no reference to the [relevant] arbitration agreement; [does] not attach the agreement as an exhibit; and [does] not base the claims on the existence of the agreement," Young v. Experian Info. Sols., Inc., 119 F.4th 314, 318 (3d Cir. 2024) (cleaned up), the agreement can be considered by the court, so long as no one tees up a relevant factual issue --- like whether it was indeed signed by the party against whom enforcement is sought. See generally id. at 318-21. Here, no factual issues have been raised, so the Court can look to the two documents alluded to in the text.

3

> Let's not fight in court. Even in the best of relationships, disputes can arise. Rather than fighting it out in court, both you and [the employer] agree to arbitrate . . . any . . . and all employment related disputes, including claims under state or federal law. . . .
>
> You also agree to let the entire dispute be handled by JAMS, pursuant to the JAMS Employment Rules & Procedures. . . .
>
> By choosing arbitration, both of us agree that arbitration will be the sole remedy for any disputes between us (with the exception of claims before administrative bodies), and neither of us will pursue any action in court, except that either of us may file an application for injunctive relief (or other provisional remedy) where a temporary order from a court may be necessary to preserve the status quo or protect the interests in dispute.

Employment Agreement ¶ 8.

\*   \*   \*

The Employment Agreement quoted above is plainspoken and straightforward.

It expressly indicated that by signing on, the Plaintiff was "agree[ing] to arbitrate" rather than "fighting [any disputes] out in court." Employment Agreement ¶ 8. And this was reinforced by the Employment Agreement's statements that "arbitration will be the <u>sole remedy</u> for any disputes," that "the entire[ty of any] dispute[s will] be handled by JAMS," and that neither party "will pursue <u>any</u> action in court." <u>Id</u>. (emphases added).

All of this seems to meet New Jersey law's mutual assent standard, and to check the box of a valid arbitration agreement.

The Plaintiff, though, presses three counterarguments. Tick through these.

\*   \*   \*

The Plaintiff's <u>first</u> counterargument: the Employment Agreement "does not include [sufficiently] clear and unambiguous language stating that [the Plaintiff] is waiving her right to trial by

4

judge or jury." Plaintiff's Brief at 1. Why not? Because "the words 'trial,' 'judge,' and 'jury' are completely absent from the agreement." Id. at 1; see id. at 11-16.

But here, the Employment Agreement used the word "court" repeatedly, and in a way that makes clear that a proceeding in "court" was what the Plaintiff would be giving up. See Employment Agreement ¶ 8.

When "court" is used in that way in an arbitration agreement, New Jersey law does not require "judge," "jury," or "trial" to be specifically invoked. See Collazo v. Prime Flight of DE, Inc., 2020 WL 3958498, at *7 (D.N.J. July 13, 2020) ("It is clear enough that the waiver of every kind of court trial encompasses a waiver of a particular kind of court trial, i.e., a jury trial.") (emphasis omitted); Stutheit v. Elmwood Park Auto Mall, 2018 WL 6757030, at *3-4 (N.J. Super. Ct. App. Div. Dec. 26, 2018) ("[E]xplicit waiver of the right to 'maintain a court action' would clearly include the right to a jury trial."); Roundtree v. PrimeFlight Aviation Servs., Inc., 2017 WL 4697070, at *4 (D.N.J. Oct. 19, 2017) ("'Even a person of common knowledge, but without higher formal education, might very well understand that if one waives access to a court, one has waived access to a jury.'") (quoting Emergency Physicians of St. Clare's, LLC v. Proassurance Corp., 2010 WL 3311861, at *6 (D.N.J. Aug. 19, 2010)); accord Brownlee v. Town Sports Int'l Holdings, Inc., 2019 WL 149645, at *2-3 (N.J. Super. Ct. App. Div. Jan. 8, 2019); Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 481 (App. Div. 2015); see generally Atalese, 219 N.J. at 444 ("No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights" in an arbitration agreement).

\* \* \*

The Plaintiff's second counterargument: though the Employment Agreement noted that it covered "all employment related disputes, including claims under state or federal law," Employment Agreement ¶ 8, it said nothing in particular about "workplace discrimination claims." Plaintiff's Brief at 2; see id. at 16-17.

But New Jersey law goes the other way.

In Martindale v. Sandvik, Inc., 173 N.J. 76 (2002), an employee agreed (essentially as here) to arbitrate "all disputes relating

5

to [her] employment." Id. at 81. And the New Jersey Supreme Court held that this was "clear," "unambiguous," and "sufficiently broad to encompass reasonably [the] plaintiff's statutory [claims]," id. at 96 --- which included pregnancy-based discrimination claims under the New Jersey Law Against Discrimination, similar to the ones at issue here. See id. at 82-83

\*   \*   \*

Third, the Plaintiff contends that the Employment Agreement is not valid because it "does not detail any differences between arbitration and a court of law." Plaintiff's Brief at 2.

But this, too, runs aground on the caselaw.

In Flanzman v. Jenny Craig, for example, the New Jersey Supreme Court held that an arbitration agreement could be enforced even though it "provide[d] only a general concept of the arbitration proceeding that would replace a judicial determination of [the plaintiff's] claims." 244 N.J. at 138.

Indeed, the agreement in Flanzman shed light on the "concept of . . . arbitration," id., in only one substantial way. Namely, by juxtaposing arbitration with a civil trial, and indicating that under the agreement, arbitration would take place "in lieu of a jury or other civil trial." Id. at 126 (emphasis added).[8]

This worked, per the Supreme Court, because "it ma[de] clear that the contemplated arbitration would be very different from a court proceeding." Id.

The Employment Agreement in this case makes its own comparison, and provides essentially the same level of specificity as the Flanzman agreement. See Employment Agreement ¶ 8 ("Rather than fighting it out in court, both you and Netflix agree to arbitrate . . . .").

---

[8] "Substantial" in the preceding sentence in the text because the agreement also juxtaposes arbitration and litigation in two other (narrow and technical) ways. See Flanzman 244 N.J. at 126 (indicating (1) that any arbitration award would be enforceable by "court[s] having jurisdiction," and (2) that the parties were responsible for those arbitration expenses that they would "otherwise be required to bear in a court action").

6

Accordingly, if the level of detail was enough in Flanzman, as the New Jersey Supreme Court held, then it must be enough here, too. See also Frederick v. Law Off. of Fox Kohler & Assocs. PLLC, 852 F. App'x 673, 675-77 (3d Cir. 2021) (upholding an arbitration agreement with similar language).[9]

\* \* \*

In short: the Plaintiff's three counterarguments are not persuasive, and the parties' arbitration agreement was valid under New Jersey law.

## III. Federal Law

Look now to the Plaintiff's next argument: that this case cannot be arbitrated because the 2022 Federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act "prohibits arbitration of matters such as this one, that involve allegations related to harassment on the basis of sex." Plaintiff's Brief at 2; see id at 20-26.

Per the Act, "at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under . . . State law and relates to . . . the sexual harassment dispute."  9 U.S.C. § 402(a).

The Plaintiff argues that the Act applies in cases like this one, where pregnancy-based claims are asserted --- because harassment on the basis of pregnancy is a form of sex-based harassment, see id. at 21, and in New Jersey, sexual harassment is defined broadly as that which "'occurs because of the

---

[9] The Employment Agreement here also adds a small bit of extra detail.  It "identifies a specific arbitration organization as the administrator of its program, and designat[ing] that organization's employment arbitration rules as the governing rules for the proceeding."  Skuse v. Pfizer, Inc., 244 N.J. 30, 52 (2020); see Employment Agreement ¶ 8 ("You also agree to let the entire dispute be handled by JAMS, pursuant to the JAMS Employment Rules & Procedures.").  Under New Jersey law, this weighs in favor of a mutual assent conclusion, because it also helps "make[] clear," Flanzman, 244 N.J. at 138, that arbitration is different from suing in court.  See, e.g., Chapman, 2026 WL 74192, at *5 (so holding).

7

victim's sex.'" Id. at 22-23 (quoting Lehmann v. Toys 'R' Us, 132 N.J. 587, 602 (1993)) (emphasis omitted).

In response, the Defendant argues that the Plaintiff's claims do not constitute a "well-pleaded claim[] of sex harassment" under New Jersey law. See Defendant's Reply in Further Support of Its Motion to Compel Arbitration (ECF 40) at 7-8, 10.

All of this raises questions of first impression. The meaning of the 2022 Act has not been substantively addressed by any of the Nation's federal appellate courts or by this Court.

Addressing the relevant issues will likely require sustained analysis. But as things stand, the parties' papers are sparse on this point. Before coming to a decision on the relevant federal law issue, the Court will solicit further briefing.

## IV.   Conclusion

For the reasons set out above, the Defendant's motion to compel arbitration is administratively terminated. An order will issue today as to a briefing schedule on the 2022 statute. After the briefing is received, the Court will restore the motion to its active docket.

IT IS on this 14th day of January, 2026, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

8